Mona SAVIG and Robert
Savig, Plaintiffs,

v.

FIRST NATIONAL BANK OF OMAHA
and Messerli & Kramer, P.A.,
Defendants.

No. A09–1221.

Supreme Court of Minnesota.

April 22, 2010.

Nicholas P. Slade, Barry & Slade, LLC, Minneapolis, Minnesota; and Sam Glover, Samuel J. Glover & Associates, LLC, Minneapolis, Minnesota, for plaintiffs.

David F. Herr, Haley N. Schaffer, Maslon Edelman Borman & Brand, LLP, Minneapolis, Minnesota; and Derrick N. Weber, Truman W. Schabilion, Messerli & Kramer, P.A., Plymouth, Minnesota, for defendants.

Charles F. Webber, Aaron D. Van Oort, Nathaniel J. Zylstra, Faegre & Benson LLP, Minneapolis, Minnesota, for amici curiae National Association of Retail Collection Attorneys and Capitol One Bank (USA), N.A.

Charles E. Lundberg, Michael A. Klutho, Bassford Remele, P.A., Minneapolis, Minnesota, for amicus curiae ACA International.

Teresa E. Rice, Minnesota Bankers Association, Eden Prairie, Minnesota, for amicus curiae Minnesota Bankers Association.

Simone Suri, Minnesota Credit Union Network, St. Paul, Minnesota, for amicus curiae Minnesota Credit Union Network.

Heidi L. Staloch, Michael Johnson, Bridget A. Sullivan, Gurstel, Staloch & Chargo, P.A., Golden Valley, Minnesota, for amicus curiae Gurstel, Staloch & Chargo, P.A.

OPINION

ANDERSON, G. BARRY, Justice.

This case requires us to answer certified questions of law concerning the interplay between Minnesota's garnishment statutes, Minn.Stat. §§ 571.71 to 571.932 (2008), and Minnesota's Multiparty Accounts Act (MPAA), Minn.Stat. §§ 524.6–201 to 524.6–214 (2008), and to determine who has the burden of proving net contributions to a joint checking account during a post-judgment garnishment proceeding.

A default judgment was entered against plaintiff Mona Savig for failure to make credit card payments to defendant First National Bank of Omaha. On First National's behalf, defendant Messerli & Kramer, P.A., served a post-judgment garnishment summons on Mona and Midwest Bank, where Mona had a joint checking and a joint savings account with her husband Robert Savig. Midwest Bank withheld $2,003.78 from the accounts and remitted the funds to Messerli & Kramer. The Savigs filed a complaint in federal district court on January 20, 2009, alleging that $842.37 from the joint checking account belonged to Robert, not Mona, and should not have been garnished. The complaint alleged violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 (2006), conversion, wrongful levy, and invasion of privacy.

Defendants First National and Messerli & Kramer filed a motion for judgment on the pleadings, for summary judgment, or for certification of questions of law to us, and for a stay of proceedings pending resolution of the certified questions. The federal district court certified a reformulation of the defendants' questions, and stayed the case pending resolution. We accepted the following certified questions:

1. May a judgment creditor serve a garnishment summons on a joint account to satisfy the debt of an account holder when not all of the account holders are judgment debtors? And if so,

2. Is it the judgment creditor or the account holders who bear the burden of establishing net contributions to the account during the garnishment proceeding?

3. What applicable presumptions regarding ownership, if any, apply in the absence of proof of net contributions?

Mona Savig was previously married to L.B., and in 2004, they defaulted on a credit card issued by First National, owing $8,132.88. Messerli & Kramer represented First National in Minnesota state district court to collect the unpaid debt. Default judgment was entered against Mona and L.B. on March 24, 2004, in favor of First National. Mona and L.B. divorced in April 2004 and the debt to First National remained unpaid. Mona later married Robert Savig.

To satisfy the judgment against Mona, Messerli & Kramer, representing First National, served a post-judgment garnishment summons on Mona and Midwest Bank on January 2, 2009. In response, Midwest Bank completed the statutory disclosure form, and indicated that it possessed $2,003.78 belonging to Mona. Midwest Bank then retained money from two accounts: $1,438.10 from a checking account that Mona and Robert jointly held, and $565.68 from a jointly held savings account. Mona and Robert allege that $842.37 of the $1,438.10 from the joint checking account was from one of Robert's paychecks, so only $595.73 should have been retained from the joint checking account.[1]

When Midwest Bank retained the funds, Mona did not claim any exemptions, did not request a hearing, and Robert did not intervene to claim any interest in the funds. Robert alleges that on January 9, 2009, he contacted Messerli & Kramer and informed the firm that when Messerli & Kramer garnished the joint checking account through Midwest Bank, it had illegally seized some of his funds because there was no judgment against Robert; Mona was a debtor, but Robert was a non-debtor. He also contends that at that time, a Messerli & Kramer employee refused to return any funds.[2]

On January 20, 2009, Mona and Robert filed a complaint against First National and Messerli & Kramer in federal district court, alleging violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, conversion, wrongful levy, and invasion of privacy. In their complaint, the Savigs relied on *Enright v. Lehmann*, 735 N.W.2d 326 (Minn.2007), and argued that pursuant

---

1. In their complaint, Mona and Robert stated that ownership of the funds from the joint savings account could not be determined at the time the action was brought in federal district court.

2. Messerli & Kramer states in its reply brief that approximately three months after Robert's phone call to Messerli & Kramer, the firm sent Robert a check for $842.37 after the Savigs provided information that appeared to establish Robert's claim for that amount.

to the MPAA, Minn.Stat. § 524.6–203(a), a creditor is not permitted to garnish a non-debtor's funds in a joint account unless the creditor proves by clear and convincing evidence that the depositing party intended to confer ownership of the funds on the debtor. First National and Messerli & Kramer filed a motion for judgment on the pleadings, summary judgment, or certification of questions of law to this court, and a stay of proceedings pending resolution of the certified questions. They argued, in part, that *Enright* should not be read so broadly. The federal district court certified a reformulation of First National and Messerli & Kramer's questions because the court determined that no controlling appellate decision, constitutional provision, or statute of Minnesota addresses the questions.[3] The court stayed the case pending resolution of these three questions and we accepted the certified questions.

■ We "may answer a question of law certified ... by a court of the United States ... if the answer may be determinative of an issue in pending litigation in the certifying court and there is no controlling appellate decision, constitutional provision, or statute of this state." Minn. Stat. § 480.065, subd. 3 (2008). The certified questions involve statutory interpretation and identification of the applicable burden and standard of proof, which are questions of law that we review de novo. *See C.O. v. Doe,* 757 N.W.2d 343, 352 (Minn.2008); *Dohney v. Allstate Ins. Co.,* 632 N.W.2d 598, 600 (Minn.2001).

## I.

We first address whether a judgment creditor may serve a garnishment summons on a garnishee, attaching funds in a joint account to satisfy the debt of an account holder, even though not all of the account holders are judgment debtors. The Savigs argue that a creditor may serve a garnishment summons that attaches funds in a joint account only if the creditor first provides clear and convincing evidence of ownership of the funds in the joint account. In contrast, First National argues that a judgment creditor has a statutory right to at least serve a garnishment summons on a financial institution to start the garnishment process, regardless of whether the property is in a joint account.

State statutes authorize and govern garnishment proceedings in Minnesota. *See* Minn.Stat. §§ 571.71 to 571.932. Garnishment is "an ancillary proceeding to a civil action for the recovery of money." Minn. Stat. § 571.71. The process begins with a creditor[4] serving a garnishment summons and disclosure form on a garnishee;[5] copies of the summons and disclosure form are also served on the debtor.[6] Minn.Stat. § 571.72, subds. 2, 4, 5. If the debtor is a natural person and the funds to be garnished are held on deposit in a financial institution (the garnishee), the creditor must also send an exemption notice with the garnishment summons to the debtor

3. Any subsequent reference to First National also signifies a reference to co-defendant Messerli & Kramer.

4. " 'Creditor' means the party who has a claim for the recovery of money in the civil action whether that party is the plaintiff, defendant, or other party in the civil action and who is issuing or requesting the issuance of a garnishment summons." Minn.Stat. § 571.712, subd. 2(a).

5. " 'Garnishee' means the third party upon whom the garnishment summons is served." Minn.Stat. § 571.712, subd. 2(c).

6. " 'Debtor' means a party against whom the creditor has a claim for the recovery of money in the civil action whether that party is the plaintiff, defendant, or other party in the civil action." Minn.Stat. § 571.712, subd. 2(b).

and garnishee.[7] *See* Minn. Stat. § 571.72, subds. 4, 8. Within two business days of receiving the summons and exemption notice, the garnishee must serve upon the debtor two copies of the exemption notice so that the debtor may claim an exemption. Minn.Stat. § 571.913. In addition, the garnishee must complete the disclosure form, indicating the garnishee's indebtedness, money, or other property owing to the debtor, and serve the written disclosure upon the creditor and the debtor. Minn.Stat. §§ 571.72, subd. 2(3); 571.75, subd. 1. The garnishee must also retain the amount it has on deposit owing to the debtor, but not more than 110 percent of the creditor's claim. Minn.Stat. § 571.911.

■ The Savigs do not dispute that First National complied with the statutory requirements in serving the summons on Mona and Midwest Bank (e.g., serving the correct type and number of forms); rather, they dispute whether First National was permitted to serve the summons in the first place.

Minnesota Statutes § 571.71 gives broad authority to a creditor to begin the garnishment process by issuing a garnishment summons: "[A] creditor may issue a garnishment summons as provided in this chapter against any third party ... at any time after entry of a money judgment in the civil action." There are no restrictions in Minn.Stat. § 571.71 concerning the type of property that a creditor may seek to garnish when serving a summons.

Because Minn.Stat. § 571.71 does not restrict a creditor from serving a summons based on the type of property ultimately reached by garnishment, First National argues that there is nothing to prevent a creditor from at least commencing garnishment proceedings by serving a garnishment summons that may reach property in a joint account. First National further contends that serving a garnishment summons on a garnishee holding property in a joint account is permissible because the text of the garnishment summons provided by Minn.Stat. § 571.74 does not exclude or distinguish property held in a joint account.[8]

In contrast, the Savigs argue that the broad authority of a creditor to serve a garnishment summons is restricted by the MPAA, Minn.Stat. §§ 524.6–201 to 524.6–214. Minnesota Statutes § 524.6–203(a) states that "[a] joint account belongs, during the lifetime of all parties, to the parties in proportion to the net contributions by each to the sums on deposit, unless there is clear and convincing evidence of a different intent."[9] Based on Minn.Stat. § 524.6–203(a), the Savigs argue that a creditor may serve a summons on a garnishee and attach funds in a joint account

---

7. The creditor must send two copies of the exemption notice to the garnishee if the garnishee is a financial institution. Minn.Stat. § 571.911.

8. Minnesota Statutes § 571.74 provides, in relevant part:
 To the Garnishee named above:
 You are hereby summoned and required to serve upon the creditor's attorney (or the creditor if not represented by an attorney) and on the debtor within 20 days after service of this garnishment summons upon you, a written disclosure, of the nonexempt indebtedness, money, or other property due or belonging to the debtor and owing by you or in your possession or under your control and answers to all written interrogatories that are served with the garnishment summons.

9. " 'Net contribution' of a party to a joint account as of any given time is the sum of all deposits thereto made by or for the party, less all withdrawals made by or for the party which have not been paid to or applied to the use of any other party...." Minn.Stat. § 524.6–201, subd. 6.

only if the creditor first provides clear and convincing evidence of a debtor's ownership of funds in a joint account. They cite *Enright v. Lehmann*, 735 N.W.2d 326 (Minn.2007), in support of their interpretation of Minn.Stat. § 524.6–203(a).

At issue in *Enright* was a conflict between *Park Enterprises v. Trach*, 233 Minn. 467, 47 N.W.2d 194 (1951), and Minn.Stat. § 524.6–203(a) (which was enacted subsequent to *Park Enterprises*). *Enright*, 735 N.W.2d at 328. Under the rule announced in *Park Enterprises*, a creditor could garnish all of the funds in a joint account without regard to how much a debtor had actually contributed. *See Park Enters.*, 233 Minn. at 470, 47 N.W.2d at 196. In contrast, Minn.Stat. § 524.6–203(a) provides that a "joint account belongs ... to the parties in proportion to the net contributions by each to the sums on deposit, unless there is clear and convincing evidence of a different intent."

In *Enright*, the district court had granted a default judgment to the creditor against the debtor for rent due. 735 N.W.2d at 329. The creditor garnished two bank accounts that the debtor jointly held with his wife. *Id.* It was undisputed that the debtor's wife (a non-debtor) had deposited all of the money in the joint accounts. *Id.* The debtor argued that because all of the money in the joint accounts had been deposited by his wife, the money could not be garnished. *Id.*

We agreed with the debtor in *Enright*, and stated that Minn.Stat. § 524.6–203(a) abrogated the rule articulated in *Park Enterprises*. *Enright*, 735 N.W.2d at 334. The language of the MPAA is unambiguous. In a controversy between parties to a multi-party account and their credi-

tors, funds in a joint account belong to the parties in proportion to their net contributions. A party's net contribution is the amount of money deposited by or for him, less withdrawals made by or for him.

*Id.* at 331. We held that "where one party has contributed all the money in a joint account, a creditor cannot garnish the account to satisfy a debt belonging to a noncontributing party unless the creditor provides clear and convincing evidence that the depositor intended to confer ownership of the funds on the debtor." *Id.*

But the Savigs argue for a rule that goes beyond our holding in *Enright*. In *Enright*, we were not faced with the question of whether a creditor could serve a garnishment summons; a summons had already been served and retention of funds in the joint accounts had taken place.[10] *See id.* at 329. The debtor had established that the money belonged to the non-debtor account holder, so the question was whether a creditor was entitled to the non-debtor's money in spite of that undisputed fact. *See id.* Our focus in *Enright* was on the end of the garnishment process and execution, not the beginning of the process.

There is no hint in *Enright* that the creditor's service of a summons was improper, and the holding in *Enright* is narrower than the Savigs contend. *Enright* stands for the proposition that joint account holders may contest the retention of funds from a joint account, and where there is evidence that all of the funds in a joint account belong to a non-debtor, a creditor is not permitted to retain the money unless the creditor can show by clear and convincing evidence that the money was intended to belong to the debtor. We do not read *Enright* or Minn.Stat.

---

**10.** Neither party in *Enright* briefed the issue of whether a creditor, as an initial step in the garnishment process, may serve a garnishment summons if the property at issue involves a joint account.

§ 524.6–203(a) as requiring a creditor to prove by clear and convincing evidence prior to serving a summons that the funds belong to the debtor. Garnishment involves multiple steps, and serving the summons is merely the first step in the garnishment process.[11]

Given that Minn.Stat. § 571.71 provides broad authority to a judgment creditor to serve a garnishment summons and Minn. Stat. § 524.6–203(a) does not limit this first step in the garnishment process, we answer the first certified question in the affirmative: a judgment creditor may serve a garnishment summons on a garnishee, attaching funds in a joint account to satisfy the debt of an account holder, even though not all of the account holders are judgment debtors.

## II.

Next, we address the second certified question: "Is it the judgment creditor or the account holders who bear the burden of establishing net contributions to the account during the garnishment proceeding?" The plain language of Minn.Stat. § 524.6–203(a) does not provide the answer. In order to answer the question of who has the burden of establishing net contributions to a joint account, we first consider what happens after a creditor serves a garnishment summons.

After a creditor serves a garnishment summons and a disclosure form on a garnishee, the garnishee must provide written disclosure of the garnishee's "indebtedness, money, or other property owing to the debtor," up to 110 percent of the creditor's claim stated on the summons. Minn. Stat. § 571.72, subd. 2(3)-(4). The disclo-

sure must also state "[w]hether the debtor asserts any exemption, or any other objection, known to the garnishee against the right of the creditor to garnish" the property, and whether any other person asserts a claim to the property and the nature of that claim. Minn.Stat. § 571.75, subd. 2(d)-(e). The garnishee must serve the disclosure on the creditor and debtor within 20 days of receiving the summons. Minn.Stat. § 571.72, subd. 2(3). In addition, upon being served a summons, a garnishee, such as Midwest Bank, has an obligation to retain possession and control of money "due or belonging to the debtor" that is in the garnishee's control. Minn. Stat. §§ 571.73, subds. 1, 3(2); 571.911. The garnishee retains the funds for 14 days to provide the debtor with an opportunity to claim an exemption or make objections. *See* Minn.Stat. § 571.913. During this time, any person not a party to the action that has or claims an interest in the property may intervene or join in the proceeding, or a court may require such a person to be joined to the proceeding. *See* Minn.Stat. § 571.83.

The crux of the issue here is that a garnishee has an obligation to retain money that is "*due* or *belonging* to the debtor." Minn.Stat. § 571.73, subd. 3(2) (emphasis added). But Minn.Stat. § 524.6–203(a) of the MPAA says that a joint account "belongs" to account holders "in proportion to the net contributions by each to the sums on deposit, unless there is clear and convincing evidence of a different intent." In a situation involving a joint account, the precise amount of money that is "due or belonging to the debtor" is not clear without some evidence of who contributed the

---

**11.** The Savigs concede that "Defendants are correct that nothing in the MPAA prohibits the issuance of a garnishment summons." But they contend that "that is not the issue. The issue is whether a garnishment summons may be used to attach the funds of a nondebtor in a joint account." Thus, the Savigs are concerned with what happens *after* a summons is served.

funds or for whom the funds were contributed. Thus, the dilemma for a garnishee is that under Minn.Stat. § 571.73, subds. 1, 3, and Minn. Stat. § 571.911, a financial institution is obligated to retain possession and control of money and property that is "due or belonging to the debtor" following service of a summons, but the garnishee is not in a position to discern what amount "belongs" to the debtor under Minn.Stat. § 524.6–203(a) (i.e., the garnishee does not know what the debtor's net contributions are).

■ The Savigs argue that a creditor should have the burden of proving net contributions because a non-debtor's funds should not be subject to garnishment in the first place. Their claim comes down to this: Minn.Stat. § 571.73, subd. 3(2), states that service of a garnishment summons only attaches to money "due or belonging to the debtor" that is in the garnishee's control. They argue that funds contributed by a non-debtor to a joint account do not "belong" to a debtor; therefore, a garnishee should not retain those funds. Further, in *Enright* we stated that section 571.73 is a "general procedural statute describing the process by which creditors in Minnesota may satisfy judgments, while section 524.6–203 is a specific substantive statute defining the ownership of funds in a joint bank account." *Enright*, 735 N.W.2d at 335. To avoid a conflict between sections 571.73 and 524.6–203(a), we held in *Enright* "that a joint account holder's power of withdrawal does not, by itself, mean that funds he did not contribute are 'due' him within the meaning of section 571.73, subd. 3(2)." *Enright*, 735 N.W.2d at 335. And "funds in a joint account may not be garnished to satisfy a judgment

against a party who did not contribute the funds, unless the creditor provides clear and convincing evidence that the depositor intended the funds to belong to the debtor." *Id.* at 336. Based on the language of section 524.6–203(a) and *Enright*, the Savigs argue that the burden is on creditors to prove ownership of funds in a joint account.

We are not persuaded for several reasons: (1) our analysis of the text and legislative history of Minn.Stat. § 524.6–203(a), which is based on the Uniform Probate Code; (2) other Minnesota statutes; (3) our analysis of *Enright*; and (4) case law from other jurisdictions. We conclude that the burden of establishing net contributions to a joint account in a garnishment proceeding should be on the account holders.

A. Text and Legislative History of Minn.Stat. § 524.6–203(a)

We turn first to the text and legislative history of the relevant provision of the MPAA. Minnesota Statutes § 524.6–203(a) of the MPAA states: "A joint account belongs, during the lifetime of all parties, to the parties in proportion to the net contributions by each to the sums on deposit, unless there is clear and convincing evidence of a different intent." [12]

The Minnesota Legislature enacted the MPAA in 1973. Act of May 23, 1973, ch. 619, 1973 Minn. Laws 1472, 1472–80 (codified at Minn.Stat. §§ 528.01–.16 (1974)). In 1994, the Legislature renumbered the MPAA as part of the Probate Code, but did not modify the text of what is now Minn.Stat. § 524.6–203(a). Act of Apr. 20, 1994, ch. 472, § 63, 1994 Minn. Laws 375,

---

12. Minnesota Statutes § 524.6–203 is applicable to the dispute here because the immediately preceding section, 524.6–202, states that the "provisions of sections 524.6–203 to 524.6–205 concerning beneficial ownership as between parties … are relevant … to controversies between [joint account holders] and their creditors."

415 (renumbering Minn.Stat. §§ 528.01 to 528.15 as §§ 524.6–201 to 524.6–213).

 Contrary to the Savigs' argument, the text of Minn.Stat. § 524.6–203(a) is silent on who has the initial burden of proving net contributions to a joint account. Nevertheless, "[w]here the words of a law are not explicit, the intent of the legislature may be ascertained by considering other laws upon the same or similar subjects." *In re Butler*, 552 N.W.2d 226, 231 (Minn.1996). Minnesota Statutes § 524.6–203(a) is identical to article 6, section 103(a) of the 1969 Uniform Probate Code, and the uniform law's legislative history is helpful. "The intention of the drafters of a uniform act becomes the legislative intent upon enactment." *Butler*, 552 N.W.2d at 231.

The official commentary to the Uniform Probate Code states that the statute "contains no provision dealing with division of the account when *the parties* fail to prove net contributions." Unif. Probate Code § 6–103 cmt. (1969) (emphasis added). In other words, the comment suggests that the drafters of the multi-party accounts provision in the Uniform Probate Code intended that the burden of proving net contributions would be on the account holders, not on creditors. This reference is limited in its helpfulness, but it does provide some guidance on the legislative intent.

B. Other Minnesota Statutes

Although the text and legislative history of Minn.Stat. § 524.6–203 do not provide a clear answer to the question before us, our conclusion that the burden of proving net contributions should be on account holders is consistent with Minnesota's garnishment procedure, and we are guided to our conclusion, in part, by practical consider-

ations. Minnesota Statutes § 550.37 (2008) sets forth numerous grounds for debtors to claim exemptions from garnishment, but the burden of proving entitlement to an exemption is on the debtor. Section 550.37 provides a list of property that a debtor can claim as exempt from garnishment. Exemptions pertaining to insurance proceeds, beneficiary association payments, earnings of a minor child, and employee benefits, "shall not be affected by the subsequent deposit of the funds in a bank ..., whether in a single or joint account, if the funds are traceable to their exempt source.... *The burden of establishing that funds are exempt rests upon the debtor.*" *Id.*, subd. 20 (emphasis added).

Built into the garnishment statutes is the presumption for exempt property that a garnishee may retain it upon receiving a summons, but such property is not ultimately subject to garnishment if the debtor successfully establishes an exemption. An exemption form is provided to a debtor, and the debtor is allowed to claim exemptions from garnishment. Minn.Stat. §§ 571.911, 571.912, 571.913. Section 571.913, however, states that "[i]f no claim of exemption is received by the financial institution within 14 days after the exemption notices are mailed to the debtor, the funds remain subject to the garnishment summons." The wording of these statutes implies that funds are first retained by a garnishee, and a debtor is subsequently allowed to object. Although the list of exemptions does not expressly address joint account funds, the approach most consistent with the overall process built into the garnishment statutes is to place the burden of proof on the account holders to prove net contributions, similar to the process for claiming an exemption.[13]

---

**13.** One drawback to the current garnishment procedure is that the exemption form issued

Applying this approach to funds in joint accounts is also consistent with other statutory requirements, and appears to be the most workable approach for creditors, debtors, and garnishees. Under Minn. Stat. § 571.911, a garnishee's obligation to retain the money due or belonging to the debtor occurs "[u]pon receipt of the garnishment summons and exemption notices." There is no provision that first allows creditors or debtors to prove net contributions before a garnishee must retain funds; a garnishee's obligation to retain funds is immediate. Therefore, some type of presumption concerning ownership of funds in a joint account is necessary to answer whether and to what extent a garnishee may initially retain funds to fulfill its statutory obligation under Minn.Stat. §§ 571.73 and 571.911.

The garnishment statutes provide a safeguard for garnishees: so long as a garnishee has "a good faith belief that the property retained is subject to the garnishment summons," the "garnishee is not liable to the debtor, creditor, or other person for wrongful retention *if the garnishee retains . . . money . . . of the debtor or any other person*, pending the garnishee's disclosure or consistent with the disclosure the garnishee makes." Minn.Stat. § 571.73, subd. 2 (emphasis added). In other words, Minnesota's garnishment statutes are written in such a way that a garnishee has an immediate obligation to retain property of a debtor that the garnishee believes, in good faith, belongs to

the debtor.[14] The wording of Minn.Stat. § 571.73, subd. 2, however, takes into account that there may be situations where a garnishee retains money that, ultimately, does not belong to a debtor. This provision supports the conclusion that, as discussed further in Section III of our opinion, it is permissible to initially presume that all of the funds in a joint account belong to a debtor, particularly so that a financial institution can meet its obligation under Minn.Stat. § 571.911 to retain funds upon receipt of a summons, and account holders then have the burden of proving net contributions. If we were to place the burden on a party other than the account holders, as a practical matter, given the burden associated with attempting to prove ownership by another, it would be difficult, and perhaps impossible, to garnish a joint bank account.

Thus, although the statute at issue, Minn.Stat. § 524.6–203(a), does not expressly allocate the burden of proving net contributions, we conclude that the most workable approach, consistent with the process for garnishments in Minnesota, is to place the burden on account holders to prove net contributions. That is, to apply a general rule that for purposes of a creditor serving a garnishment summons and a garnishee initially retaining funds in a joint account, the debtor is initially, but rebuttably, presumed to own all of the funds in a joint account, but any account

to a debtor does not state that a debtor or non-debtor joint account holder may object to the garnishment proceeding based on Minn. Stat. § 524.6–203(a). *See* Minn.Stat. § 571.912 (outlining what must be included in an exemption form and providing various grounds on which an exemption may be claimed).

**14.** This approach also comports with Minn. Stat. § 524.6–208, which provides that

[a]ny multiple-party account may be paid, on request, to any one or more of the [account holders]. A financial institution shall not be required to inquire as to the source of funds received for deposit to a multiple-party account, or to inquire as to the proposed application of any sum withdrawn from an account.

holder may rebut that presumption upon a preponderance of evidence of ownership.

### C. Analysis of *Enright*

Because the Savigs' argument relies so heavily on our decision in *Enright* and our discussion there of Minn.Stat. § 524.6–203(a), we next analyze *Enright.* We first note that the holding in *Enright* does not contradict our conclusion that account holders should have the burden of proving net contributions to a joint account. The facts in *Enright* were different than the facts here. In *Enright,* it was undisputed that the non-debtor joint account holder (the debtor's wife) had contributed all the funds in the joint accounts. 735 N.W.2d at 329 ("Lehmann [debtor] asserts, and ·Enright [creditor] agrees, that Zandra [non-debtor] deposited all the money in the joint accounts."). The creditor made no attempt to show that the non-debtor intended to confer ownership of the funds to the debtor by placing the funds in the joint account. *Id.*

The primary question was whether the non-debtor's funds could be garnished to satisfy a judgment entered against the debtor. *Id.* The funds had already been retained; the issue was whether the creditor was entitled to the funds in spite of the undisputed fact that the money was the non-debtor's. We stated our holding on this question in slightly different, but consistent ways, three separate times in the opinion:

1. "We reverse and hold that the plain language of the Multi–Party Accounts Act, Minn.Stat. § 524.6–203(a) (2006), prevents a creditor from garnishing funds in a joint account not contributed by the debtor unless the creditor proves by clear and convincing evidence that the depositing party intended to confer ownership of the funds on the debtor." *Enright,* 735 N.W.2d· at 328.

2. "Therefore, we hold that where one party has contributed all the money in a joint account, a creditor cannot garnish the account to satisfy a debt belonging to a non-contributing party unless the creditor provides clear and convincing evidence that the depositor intended to confer ownership of the funds on the debtor." *Id.* at 331.

3. "Under the plain language of Minn. Stat. § 524.6–203, funds in a joint account may not be garnished to satisfy a judgment against a party who did not contribute the funds, unless the creditor provides clear and convincing evidence that the depositor intended the funds to belong to the debtor." *Enright,* 735 N.W.2d at 336.

*Enright* established a rule placing the burden on creditors to prove ownership of funds in a joint account *once net contributions are known.* We did not address the preliminary question of who has the burden of first proving net contributions. Who made the contributions is a separate and distinct question from whether a known contributor intended to confer ownership of certain funds.

Because the debtor in *Enright* had already established that the funds in the joint accounts belonged to the non-debtor account holder, we were not faced with the question of whether creditors or account holders have the burden of proving net contributions. We were only concerned with who has the burden of proof after net contributions are known. *Enright* does not answer the question here, so the Savigs' reliance on *Enright* is misplaced, and our conclusion here is not inconsistent with our holding in *Enright.*

### D. Case Law from Other Jurisdictions Interpreting the Uniform Law

■■■ If possible, we should construe the Minnesota MPAA consistently with courts from other jurisdictions that have faced the same issue under the Uniform Probate Code. "Laws uniform with those of other states shall be interpreted and construed to effect their general purpose to make uniform the laws of those states which enact them." Minn.Stat. § 645.22 (2008). "[W]e give great weight to other states' interpretations of a uniform law." *Johnson v. Murray,* 648 N.W.2d 664, 670 (Minn.2002). Further, the Legislature's decision to move the MPAA to the Probate Code "indicates the legislature's desire that Minnesota courts interpret the MPAA consistently with those of other states." *Enright,* 735 N.W.2d at 332.

Other jurisdictions have adopted the same provision as Minnesota. For instance, Kentucky has adopted a provision identical to Minn.Stat. § 524.6–203(a) and numbered it in the probate section. Ky. Rev.Stat. § 391.310(1) (2008). In *Brown v. Commonwealth,* 40 S.W.3d 873, 882 (Ky. Ct.App.1999), the court adopted the posi-

tion that "a party to a joint account may, for attachment and execution purposes, initially be presumed to own the entire joint account. Upon notice and objection, however, the debtor or any third-party account [holder] may rebut that presumption by proof of separate net contributions." Thus, Kentucky places the burden on an account holder to rebut the presumption that the account holder owns the entire account.

Besides states that have adopted the Uniform Probate Code, some jurisdictions that rely on common law place the burden on account holders for proving net contributions. *E.g., Amarlite Architectural Prods., Inc. v. Copeland Glass Co.,* 601 So.2d 414, 416 (Ala.1992) ("[T]here is a rebuttable presumption that the funds in the joint account belong to the debtor. The burden is on the depositors to prove otherwise. We consider this to be the most equitable solution, because it is much easier for the depositors than the creditor to have or obtain proof of the ownership of the commingled funds." (citation omitted)).[15]

---

**15.** Other cases include: *Hayden v. Gardner,* 238 Ark. 351, 381 S.W.2d 752, 754 (1964) ("[T]he burden [is] on each joint depositor to show what portion of the funds he or she actually own[s]. We believe this is the fair and reasonable rule because the depositors are in a much better position than the judgment creditor to know the pertinent facts."); *Leaf v. McGowan,* 13 Ill.App.2d 58, 141 N.E.2d 67, 71 (1957) ("[I]f a garnishee answers that a judgment debtor holds money in a joint bank account, this is sufficient proof to establish a prima facie case for the judgment creditor that the money in the account belonged to the judgment debtor. The burden is then upon the other party to the joint account to prove what part, if any, of the funds in such account belonged to him."); *Baker v. Baker,* 710 P.2d 129, 134 (Okla.Civ.App.1985) ("[I]t is presumed that the debtor ... is entitled to the entire joint account, [and] the burden is placed on the debtor or intervenor to prove

otherwise."); *Yakima Adjustment Serv. Inc. v. Durand,* 28 Wash.App. 180, 622 P.2d 408, 411 (1981) ("The burden of proving the ownership of the funds rests upon the joint depositors. This holding coincides with the majority rule."); *Hancock v. Stockmens Bank & Trust Co.,* 739 P.2d 760, 761–62 (Wyo.1987) ("The majority rule is that the burden of proving what funds in a bank account, held jointly by the judgment debtor and another depositor, are not subject to execution is on the depositors.").

First National also cites *Bar–Meir v. North American Die Casting Ass'n,* No. C6–03–331, 2003 WL 22015444 (Minn.App. Aug.26, 2003), in support of the rule that the burden of proving who contributed to a joint account rests upon account holders. This case is unhelpful here, however, because the case was addressing whether funds were exempt, not whether funds were subject to garnishment in the first place.

Although we are not bound to follow these cases, we note that these jurisdictions support the rule that a joint account holder is presumed to own all funds in a joint account, and the burden of proof is on the account holders to rebut that presumption. At the same time, however, there are other jurisdictions that apply a joint tenancy theory to determine ownership of funds in joint accounts, and apply a rebuttable presumption that joint account holders are entitled to *equal* shares. *E.g., Musker v. Gil Haskins Auto Leasing, Inc.,* 18 Ariz.App. 104, 500 P.2d 635, 638 (1972); *Lamb v. Thalimer Enters., Inc.,* 193 Ga. App. 70, 386 S.E.2d 912, 914 (1989) (interpreting the Georgia multiple-party accounts provisions); *Purma v. Stark,* 224 Kan. 642, 585 P.2d 991, 993 (1978). Other jurisdictions have also adopted this rebuttable presumption of ownership in equal shares based on statutory language that Minnesota has not enacted. *See Harvey v. Harvey,* 841 P.2d 375, 378 (Colo.Ct.App. 1992); *Lewis v. House,* 232 Va. 28, 348 S.E.2d 217, 219 (1986).

■ In spite of the variance among the jurisdictions, we conclude that placing the burden on account holders to rebut the presumption that all of the funds in a joint account belong to an account holder is the better approach. A basic principle in allocating a burden of proof is that "all else being equal, the burden is better placed on the party with easier access to relevant information." *In re UnitedHealth Group Inc. S'holder Derivative Litig.,* 754 N.W.2d 544, 561 (Minn.2008) (citation omitted) (internal quotation marks omitted). The account holders are in the best position to provide details concerning who contributed or withdrew funds from a joint account; they are in a better position to know relevant facts. We answer the second certified question as follows: the account holders to a joint account bear the burden of establishing net contributions to the account in the garnishment proceeding.

III.

■ Lastly, we turn to the third certified question: "What applicable presumptions regarding ownership, if any, apply in the absence of proof of net contributions?" The Savigs argue that the debtor should never be presumed to own all the funds in a joint account without proof of ownership. But if the creditor has given notice to non-debtor joint account holders with an opportunity to be heard, and the account holders have not provided proof of contributions, the Savigs contend that the presumption should then be that all parties to the joint account have an equal interest. We disagree and conclude that a judgment debtor is initially, but rebuttably, presumed to own all the funds in a joint account.

Similar to the issue of burden of proof addressed in Section II of this opinion, the plain language of Minn.Stat. § 524.6–203(a) does not answer whether there should be a presumption of ownership in the absence of proof of net contributions. Although the plain language of Minn.Stat. § 524.6–203(a) does not explicitly answer the question here, the plain language is indirectly helpful. The Uniform Probate Code provision adopted by Minnesota states:

A joint account belongs, during the lifetime of all parties, to the parties in proportion to the net contributions by each to the sums on deposit, unless there is clear and convincing evidence of a different intent.

Unif. Probate Code § 6–103(a) (1969). The comment to the Uniform Probate Code originally stated that "[t]he final Code contains no provision dealing with division of the account when the parties fail to prove net contributions. The omis-

sion is deliberate. Undoubtedly a court would divide the account equally among the parties to the extent that net contributions cannot be proven...." *Id.*, cmt. In 1989, however, the provision in the Uniform Probate Code was modified to expressly provide for presumption of equal ownership of funds, at least with respect to spouses:

> During the lifetime of all parties, an account belongs to the parties in proportion to the net contribution of each to the sums on deposit, unless there is clear and convincing evidence of a different intent. As between parties married to each other, *in the absence of proof otherwise, the net contribution of each is presumed to be an equal amount.*

Unif. Probate Code § 6–211(b) (1989) (emphasis added). In 1992, the Minnesota State Bar Association's Probate and Trust Law Section formed a special committee to study the changes to the Multiparty Accounts Act in the Uniform Probate Code and make recommendations to the Minnesota Legislature. The committee's report recommended renumbering Minnesota's MPAA from Minn. Stat. ch. 528, and recodifying it as part of Minnesota's Probate Code in Minn. Stat. ch. 524. Probate and Trust Law Section, Minn. State Bar Ass'n, *Report of the Special Committee on Articles II and VI, Uniform Probate Code*

104–13 (Dec. 8, 1992). The report, however, did not recommend adding the wording adopted by the Uniform Law Association in 1989 that stated that there is a presumption of equal amounts between married joint account holders in the absence of proof otherwise. *See id.* at 107. The Minnesota Legislature adopted the committee's recommendation, and did not add the presumption of equal amounts between married joint account holders to the statutory wording. *See* Minn.Stat. § 524.6–203(a). The Legislature's decision not to include an equal amounts presumption between married couples in the absence of proof otherwise suggests that the Legislature did not intend for Minnesota courts to apply an equal amounts presumption.

Based on the Legislature's decision not to adopt a presumption of equal amounts, and the discussion in Section II of this opinion concerning the requirements in the garnishment statutes in Minn. Stat. ch. 571 and their interplay with Minn.Stat. § 524.6–203(a), we answer the third certified question as follows: a judgment debtor is initially, but rebuttably, presumed to own all of the funds in a joint account, and if the presumption is not rebutted, all of the funds in the account are subject to garnishment.[16]

Certified questions answered.

---

**16.** The Savigs also argue, in abbreviated fashion, that placing the burden on account holders to prove net contributions and allowing a garnishee to initially retain funds in a joint account violates Robert's *due process rights* because the funds were retained prior to Robert, a non-debtor, receiving notice and a hearing. The Savigs' argument relies on general citations to two cases involving *prejudgment* attachments, *Sniadach v. Family Finance Corp. of Bay View*, 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969), and *Fuentes v. Shevin*, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972). The Savigs cite no authority for the proposition that post-judgment garnishment proceedings that allow a garnishee to initially retain funds belonging to a non-debtor joint account holder violate the non-debtor's due process rights.

Whether Robert's due process rights were violated is not squarely before us. The Savigs apparently did not notify the Office of the Minnesota Attorney General of their argument concerning the constitutionality of the garnishment statute. *See* Fed.R.Civ.P. 5.1(a)(1) (requiring a party that files a paper "drawing into question the constitutionality" of a state statute to file a notice of constitutional question and serve the notice and paper on the state attorney general); *Savig v. First Nat'l Bank of Omaha*, No. 09–132, 2009 WL 1955476, at *7 n. 14 (D.Minn. July 6, 2009).

MAGNUSON, C.J., participated at the hearing, but took no part in the deliberations or decision of this case.

In addition, the Savigs have not adequately briefed the issue, and we need not address it in order to answer the certified questions.

We do note, however, that although Robert did not receive a garnishment summons with his name on it, his affidavit makes clear that he was well aware of the garnishment proceeding because of the notice that was sent to Mona. Robert's actual notice of the garnishment proceeding is further evidenced by the fact that after Midwest Bank initially retained the funds in the joint account on January 2, 2009, Robert contacted Messerli & Kramer on January 9, 2009, to complain to the law firm that they had seized his funds in the joint account. In spite of the formal notice to Mona and Robert's actual notice, the Savigs did not object to the garnishment in the manner provided in the garnishment statutes; they did not notify Midwest Bank or First National that they had objections, see Minn. Stat. § 571.913, nor did they request a hearing, see Minn.Stat. § 571.914, subd. 3, nor did Robert seek to intervene, see Minn.Stat. § 571.83. Instead, approximately 18 days after Midwest Bank had retained the funds in the account on January 2, 2009, the Savigs filed a complaint on January 20, 2009, in federal district court against First National and Messerli & Kramer.