# United States Court of Appeals

## For the Eighth Circuit

_____

No. 11-3128

_____

Tracy Lind; Steve Lind

*Plaintiffs - Appellants*

v.

Midland Funding, L.L.C.;
Messerli & Kramer, P.A.;
Derrick N. Weber

*Defendants - Appellees*

_____

Appeal from United States District Court
for the District of Minnesota - Minneapolis

_____

Submitted: May 16, 2012
Filed: August 9, 2012

_____

Before RILEY, Chief Judge, MELLOY and SMITH, Circuit Judges.

_____

MELLOY, Circuit Judge.

Tracy and Steve Lind filed this suit after defendants attached funds in the Linds' joint bank account pursuant to Minnesota's garnishment laws. The Linds allege that defendants deprived Tracy of her due process rights in violation of 42 U.S.C. § 1983

and that defendants violated the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 (FDCPA). The district court[1] dismissed both claims. We affirm.

## I.

Steve Lind defaulted on a credit card debt he held with Bank of America. Bank of America assigned the debt to Midland Funding, LLC, and on November 16, 2010, Midland obtained a default judgment against Steve in state court for the amount of $11,410.90. Midland retained Messerli & Kramer, P.A.[2] to collect the debt on its behalf.

On January 3, 2011, Messerli served a third-party garnishment on First National Bank of the North (FNB). FNB informed Messerli that it possessed funds owed to Steve Lind, and attached $1,339.72 in the two accounts on which his name appeared. Of the attached funds, $328.65 were from a joint checking account shared by Steve and Tracy, while the remaining $1,011.07 were in a savings account that bore only Steve's name.[3] Pursuant to Minnesota's garnishment statutes, FNB sent notice to Steve Lind that the funds in his accounts were attached, and the notice explained the procedure for claiming exemptions. Separate notice was not sent to Tracy Lind, and her name did not appear on the notice sent to Steve. She was, however, aware of the

---

[1]The Honorable John R. Tunheim, United States District Judge for the District of Minnesota.

[2]Derrick Weber, named individually as a defendant, is an attorney with Messerli & Kramer.

[3]The parties dispute whether the savings account was owned solely by Steve or owned jointly with Tracy. Because this appeal comes to us from a grant of the defendants' motion to dismiss, we accept as true the Linds' contention that the savings account was jointly owned by Tracy; however, the amount of funds in dispute does not alter the extent of Tracy's rights under § 1983 or the FDCPA.

notice sent to her husband, and the Linds sought legal counsel for advice on the garnishment.

On January 13, 2011, Steve Lind submitted an exemption claim alleging that all of the attached funds were either contributed by Steve from his unemployment benefits or contributed by Tracy, and therefore were not subject to the garnishment pursuant to Minnesota garnishment laws. On January 20, Messerli sent Steve a letter agreeing to release $236 from the joint checking account as an amount attributable to exempt unemployment benefits, but Messerli objected to the Linds' claim as to the remaining $1,103.72 because the source of those funds was unclear. An exemption hearing in state court was set for January 31; however, the judge ordered the parties to discuss settlement prior to the hearing. After discussions with Messerli, the Linds agreed to pay Midland $500 of the disputed $1,103.72, and Midland agreed to release the remaining funds.

The Linds subsequently filed suit in the District of Minnesota alleging violations of 42 U.S.C. § 1983 and the FDCPA. The Linds also sought a declaratory judgment that the Minnesota garnishment statutes are unconstitutional. The district court dismissed the suit, finding that Tracy Lind had received constitutionally sufficient notice and an opportunity for a hearing, and noting also that the Linds failed to allege any state action, as required by their due process claim. As for the Linds' second claim, the district court found that they had failed to allege any independent violation of the FDCPA in the complaint. Because no underlying controversy remained, the court declined to address the declaratory judgment claim regarding the constitutionality of the Minnesota statutes.[4] The Linds appeal.

---

[4]Although the Linds continue to argue that the Minnesota garnishment statute is unconstitutional insofar as its purported lack of safeguards gave rise to their § 1983 claim against the defendants, on appeal they do not appear to challenge the district court's refusal to address their request for declaratory judgment. We therefore do not consider the constitutionality of the Minnesota statute independently from the Linds'

-3-

II.

We review de novo a dismissal for failure to state a claim, accepting as true the facts alleged in the complaint and granting reasonable inferences in favor of the non-moving party. Crooks v. Lynch, 557 F.3d 846, 848 (8th Cir. 2009). "A claim upon which relief may be granted . . . under § 1983 must embody at least two elements." Flagg Bros., Inc. v. Brooks, 436 U.S. 149, 155 (1978). First, the plaintiff must show she was deprived of a right "secured by the Constitution and the laws" of the United States; second, she must also show that the defendants acted under color of state law. Id. (internal quotation marks omitted). Since we conclude the Linds failed to establish the deprivation of a constitutional right, we affirm on that basis and do not address the under-color-of-state-law prong.

The Linds argue that Tracy was deprived of rights conferred by the Due Process Clause of the Fourteenth Amendment because she did not receive predeprivation notice and hearing before defendants attached funds in her bank account. After considering due process concerns about prejudgment and postjudgment garnishment procedures as well as the practical constraints on garnishing a jointly held bank account under Minnesota law, we conclude that Tracy was not entitled to predeprivation notice and hearing.

The Due Process Clause provides that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. "Due process is a flexible concept, requiring only 'such procedural protections as the particular situation demands.'" Clark v. Kansas City Mo. Sch. Dist., 375 F.3d 698, 702 (8th Cir. 2004) (quoting Mathews v. Eldridge, 424 U.S. 319, 334 (1976)). Despite this flexibility, "[f]or more than a century the central meaning of procedural

_____

§ 1983 action. See United States v. Simmons, 964 F.2d 763, 777–78 (8th Cir. 1992) (issue not raised on appeal is waived).

-4-

due process has been clear: 'Parties whose rights are to be affected are entitled to be heard; and in order that they may enjoy that right they must first be notified.'" Fuentes v. Shevin, 407 U.S. 67, 80 (1972) (quoting Baldwin v. Hale, 68 U.S. 223, 233 (1863)). The Supreme Court has made clear that the opportunity to be heard must come "at a meaningful time and in a meaningful manner." Mathews, 424 U.S. at 333 (internal quotation marks omitted). It has also explained that affected parties need not receive actual notice, but only notice that is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action." Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950).

The Linds concede that Tracy had actual notice. They maintain, however, that because notice of the garnishment was sent only to Steve, in his own name, it was not "reasonably calculated" to reach Tracy. We have said that "a person cannot complain about the constitutionality of the method used to provide notice when he or she has received actual notice (assuming it is timely), for he or she has suffered no harm." Nunley v. Dep't of Justice, 425 F.3d 1132, 1139 (8th Cir. 2005). After Steve received notice of the garnishment, Tracy promptly availed herself of procedures to contest the garnishment. The facts recited in the Linds' complaint detailing their response to the notice sent in Steve's name do not support any allegation that Tracy suffered harm by not receiving separate notice in her own name.[5]

---

[5]Furthermore, considering that all but $92.65 of the disputed funds were in an account bearing only Steve's name, the Linds do not explain how either defendants or FNB would have been aware of the need to provide separate notice to Tracy about the disposition of $1,011.07 in that account. The Linds essentially contend that due process requires a creditor or garnishee to carefully review individual deposits into *every* garnished account in order to determine whether funds properly belong to an individually named account holder. The practical limitations of this argument support our conclusion that, in this case, notice sent to Steve was reasonably calculated to apprise Tracy of the garnishment. Cf. Savig v. First Nat'l Bank of Omaha, 781 N.W.2d 335, 344 (Minn. 2010) ("If we were to place the burden [of proving ownership of funds] on a party other than the account holders, as a practical matter,

-5-

Nor are we persuaded that the Linds' opportunity to be heard failed to come at a meaningful time. The Linds contend that only predeprivation notice and hearing could have satisfied Tracy's due process rights. For support, the Linds cite to a line of Supreme Court cases beginning with Sniadach v. Family Fin. Corp., 395 U.S. 337 (1969), where the Court invalidated a Wisconsin statute permitting the prejudgment garnishment of wages without prior notice or an opportunity for a hearing. See also Fuentes, 407 U.S. at 96 (invalidating Florida and Pennsylvania statutes that permitted secured installment sellers to repossess goods sold without prior notice, hearing, or judicial participation). In Fuentes and Sniadach, the Court was concerned primarily with the hardships imposed on debtors when defending against wrongful deprivations. See Fuentes, 407 U.S. at 81; Sniadach, 395 U.S. at 334.

The Court clarified in Mitchell v. W.T. Grant Co., 416 U.S. 600 (1974), and N. Ga. Finishing, Inc. v. Di-Chem Inc., 419 U.S. 601 (1975), that predeprivation notice and hearing are not always required for attachment statutes to satisfy due process. In Mitchell, the court approved as constitutional a Louisiana statute that permitted a creditor to secure a writ of sequestration on installment goods without first providing notice or an opportunity to be heard. Unlike the statutes at issue in Fuentes and Sniadach, the Louisiana statute contained certain procedural safeguards against wrongful deprivation, such as a requirement that a creditor provide a detailed factual showing to a judge before the writ could issue, the availability of an "immediate" postdeprivation hearing after attachment, and the presence of judicial supervision throughout the attachment process. Mitchell, 416 U.S. at 608–10. In light of these safeguards, the debtor's interest in the continued use and possession of his property did not outweigh the creditor's interest in protecting against the concealment or transfer of funds, and therefore the debtor was not denied due process when he was given a postdeprivation hearing. Id. at 607. By contrast, in North Georgia, the Court

given the burden associated with attempting to prove ownership by another, it would be difficult, and perhaps impossible, to garnish a joint bank account.").

again invalidated a prejudgment garnishment statute that had none of the safeguards present in <u>Mitchell</u>. <u>North Georgia</u>, 419 U.S. at 607–08. As it had in <u>Fuentes</u> and <u>Sniadach</u>, the Court in <u>North Georgia</u> disapproved of a procedure where a writ of garnishment was issuable upon bare conclusory allegations by a creditor, and where there was no participation by a judge. <u>Id.</u>

The Linds argue that, because the defendants in this case obtained a writ of execution from a court administrator rather than from a judge after a detailed factual showing, <u>North Georgia</u>, rather than <u>Mitchell</u>, should control the outcome. The Linds argue that the Minnesota statute does not contain any procedural safeguards that would justify delaying Tracy's opportunity to be heard until after the attachment of her funds. However, the postjudgment nature of the garnishment in this case distinguishes it from the Supreme Court's consideration of safeguards in prejudgment attachment cases.

The attachment in this case occurred after the defendants had already secured a judgment on Steve Lind's debt. Courts have noted that, when balancing the due process interests of a creditor and a debtor, the creditor's interest should be accorded more weight in a postjudgment context than it should be accorded in a prejudgment attachment. <u>See</u> <u>Reigh v. Schleigh</u>, 784 F.2d 1191, 1198 (4th Cir. 1986) (noting that "it is important to emphasize" the difference between prejudgment and postjudgment attachment, and that in the case of prejudgment attachment, "a party would be expected to enjoy greater rights than one who has already been adjudged judicially liable"); <u>Brown v. Liberty Loan Corp. of Duval</u>, 539 F.2d 1355, 1366 (5th Cir. 1976) ("Unlike the prejudgment creditor, the creditor here has a judicially-awarded judgment that evidences the defendant's debt. . . . This factor sharply distinguishes prejudgment from postjudgment garnishment cases. As a result, the Sniadach holding that notice and an opportunity for a hearing must precede a prejudgment garnishment of wages does not directly apply here."). Indeed, the Supreme Court acknowledged in <u>Fuentes</u> that its conclusion that a debtor could not be deprived of property without prior notice

and hearing absent "extraordinary situations," 407 U.S. at 90, applied only narrowly to the context of prejudgment deprivations, id. at 96 ("We do not question the power of a State to seize goods before a final judgment in order to protect the security interests of creditors so long as those creditors have tested their claim to the goods through the process of a fair prior hearing.").

In both the prejudgment and postjudgment contexts, postponing notice and hearing until attachment has occurred generally serves a creditor's interest in preventing the waste or concealment of a debtor's assets. See Mitchell, 416 U.S. at 608–09; Brown, 539 F.2d at 1367. In the postjudgement context, however, there is less risk of an erroneous deprivation because the creditor's claim to the debtor's property is supported by a judgment on an existing debt. Thus, when the creditor's interest is weighed against a judgment debtor's interest in the continued use and possession of his property, other circuits have found that postdeprivation notice and hearing can satisfy due process so long as it is "prompt" or "expeditious." See Reigh, 784 F.2d at 1198; Trans-Asiatic Oil Ltd. S.A. v. Apex Oil Co., 743 F.2d 956, 960 (1st Cir. 1984); Finberg v. Sullivan, 634 F.2d 50, 59 (3d Cir. 1980); Brown, 539 F.2d at 1368.[6]

_____

[6]The Linds maintain only that due process required a predeprivation hearing, and make no argument about whether their January 31 hearing was sufficiently prompt after the January 3 attachment of funds and their January 13 filing of an exemption claim. See, e.g., Finberg, 634 F.2d at 59 (concluding that "fifteen days is too long a period to deprive a person of money needed for food, shelter, health care, and other basic needs" pending an exemption hearing during postjudgment garnishment proceedings). Because the Linds do not address whether *any* post-deprivation hearing could satisfy due process, we do not consider the timing requirements for a postdeprevation hearing to satisfy due process. Compare id. with Reigh, 784 F.2d at 1198 (eschewing Finberg's specific time-frame requirement for "a more flexible course, finding due process satisfied by a requirement of a 'prompt' or 'expeditious' hearing").

Our analysis is somewhat different here because Tracy is not a debtor, and the defendants have a very limited right under Minnesota law to garnish her funds from a joint account in order to satisfy Steve's debt. See Enright v. Lehmann, 735 N.W.2d 326, 336 (Minn. 2007) ("Under the plain language of Minn. Stat. § 524.6-203, funds in a joint account may not be garnished to satisfy a judgment against a party who did not contribute the funds, unless the creditor provides clear and convincing evidence that the depositor intended the funds to belong to the debtor."). To the extent that the Linds argue that this postjudgment standard is not appropriate for Tracy because she, unlike her husband,[7] is not a debtor, see Reigh, 784 F.2d at 1198 (acknowledging that a party who has not been adjudged liable for a debt enjoys greater due process rights), we note that Tracy's right to the use and possession of her funds changed according to state law when she deposited them into a jointly held account. By operation of Minnesota law, the owners of a joint account bear the burden to prove that funds in the account do not belong to the debtor.

This burden was explained by the Minnesota Supreme Court in Savig v. First Nat'l Bank of Omaha, 781 N.W.2d 335 (Minn. 2010). Savig's facts are similar to those in the present case. The Savigs were a husband and wife sharing a joint bank account. They brought a suit for wrongful conversion and a violation of the FDCPA when a creditor initiated garnishment proceedings on their joint account in order to satisfy a judgment debt held only by the wife. A federal court certified three questions of law to the Minnesota Supreme Court, asking: (1) whether a judgment creditor could initiate garnishment proceedings on a joint account in order to satisfy a debt held by only one account holder; (2) who would bear the burden of proving the source of funds in that account; and (3) what presumptions regarding ownership would apply in the absence of proof. Id. at 337. Answering that it was permissible to initiate proceedings on a joint account, the Minnesota Supreme Court explained that practical

---

[7]On appeal, the Linds do not argue that Steve, as a judgment debtor, was deprived of his due process rights by receiving postdeprivation notice and hearing.

necessity counseled against requiring creditors to prove independent ownership of funds before initiating garnishment proceedings against a joint account. Id. at 344.

Under Minnesota law the garnishment summons imposes on the garnishee an immediate obligation to retain the property of a debtor, therefore, Savig explained, "some type of presumption concerning ownership of funds in a joint account is necessary to answer whether and to what extent a garnishee may initially retain funds to fulfill its statutory obligation." Id. The Minnesota Supreme Court decided that practical concerns must guide its use of presumptions, and noted that if it "were to place the burden on a party other than the account holders, as a practical matter, given the burden associated with attempting to prove ownership by another, it would be difficult, and perhaps impossible, to garnish a joint bank account." Id. Although Tracy's interest in a predeprivation hearing may be greater than her husband's, the risk to a creditor is the same. A requirement that a non-debtor joint account holder receive predeprivation notice and hearing would likely increase the risk that the debtor joint account holder might conceal or transfer the property that is subject to attachment.

Although we are mindful of the hardship such a process imposes on a non-debtor to prove her funds are not subject to garnishment, we believe that these practical difficulties of jointly held bank accounts lend weight to a creditor's interest. Because Tracy Lind had actual notice and an opportunity for a postdeprivation hearing, we conclude that her Fourteenth Amendment right to due process was not violated when defendants attached funds from the Linds' joint bank account pursuant to the Minnesota garnishment statutes.[8]

---

[8]Because we hold that Tracy Lind was not entitled to predeprivation hearing, we do not reach the district court's conclusion that the Linds failed to adequately plead state action necessary for a due process claim.

III.

The FDCPA was enacted to prevent "abusive, deceptive, and unfair debt collection practices." 15 U.S.C. § 1692(a), (e). The Linds' complaint alleged "numerous and multiple" violations of the Act, citing many provisions; however, they alleged no specific facts that demonstrate these violations other than stating that defendants seized funds from Tracy for a debt she did not owe. A complaint that consists of no more than conclusory allegations or that merely applies labels to defendants' conduct will not survive a motion to dismiss. Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009). The Linds do not dispute that defendants acted pursuant to the Minnesota garnishment statute, but maintain that the garnishment was unfair and abusive because the procedure deprived Tracy of her due process rights. The Linds cite no authority that suggests a successful § 1983 claim can establish a per se violation of the FDCPA. In any event, because the Linds have not established a constitutional violation, this argument must fail as a matter of law. The district court did not err in dismissing the Linds' claim.

IV.

Accordingly, we affirm the ruling of the district court.

_____