Filed 8/3/23  Dahl v. Bonta CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| JEANETTE DAHL et al., | B316892 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. No. 19SMCV00782) |
| v. | |
| ROB BONTA, as Attorney General, et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Yvette Palazuelos, Judge.  Affirmed.

Law Offices of Ron Bochner and Ron Bochner, for Plaintiffs and Appellants.

Rob Bonta, Attorney General, Thomas Patterson, Assistant Attorney General, Anya Binsacca, Jose Zelidon-Zepeda and

Christina R.B. Lopez, Deputy Attorneys General, for Defendant and Respondent Rob Bonta as Attorney General.

Logan Mathevosian & Hur and Elise Hur, for Defendant and Respondent County of Los Angeles.

———————————————

In their suit against the State of California (the State) and the County of Los Angeles (the County), plaintiffs Jeanette Dahl and Danny Ryker challenge the validity of Code of Civil Procedure section 700.160, subdivision (b) (hereafter section 700.160(b)),[1] which allows a judgment creditor to levy on the deposit account or safe-deposit box of a judgment creditor's spouse without a court order. The trial court sustained a demurrer to plaintiffs' third amended complaint without leave to amend and dismissed the complaint. We find no error and affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

In February 2017, the Superior Court for the County of Santa Barbara entered a judgment against Robert Dahl. Jeanette Dahl is Robert Dahl's ex-wife. The two divorced in 2002. Jeanette Dahl (Dahl) is now married to Danny Ryker.

Andrew Larson became the assignee of the judgment creditor. In April 2018, Larson obtained a writ of execution authorizing a levy against Robert Dahl's property. He then filed the writ of execution with the Los Angeles County Sheriff, seeking to levy on Dahl's property. In support of the writ of

---

[1] All further undesignated statutory references are to the Code of Civil Procedure.

2

execution, Larson declared: "I have full knowledge and believe to be true that judgment debtor, Robert James Dahl is married to Jeanette A. Dahl. [¶] As permitted by California Code of Civil Procedure 700.160(b)(2), I hereby request a levy on All Deposit Accounts and All Safe Deposit Boxes of Jeanette A. Dahl, whom I believe to be married to and the spouse of debtor, Robert James Dahl."

On or around April 24, 2018, Dahl's Wells Fargo bank account holding approximately $25,000 was levied upon. The funds were unavailable for Dahl or Ryker to use. Dahl provided Larson and the County documentation establishing that she and Robert Dahl were divorced, but the County asserted "it needed personal service of a certified order from the Santa Barbara Superior Court." Dahl filed an exemption claim and a motion to recall and quash the writ of execution. On June 11, 2018, the Superior Court for the County of Santa Barbara granted the exemption claim. Dahl served the order on the County by overnight mail on June 16, 2018.

According to plaintiffs' complaint, on June 22, 2018, the County "authorized non-party Wells Fargo to release [her] funds, but deducted $125 for a purported service of Wells Fargo charged to [her]." On July 3, 2018, the trial court granted Dahl's motion to recall and quash the writ of execution.

On July 25, 2018, plaintiffs filed a class action complaint against Larson, the County, and the Attorney General in his official capacity.[2] In October 2018, plaintiffs filed an amended complaint asserting claims for negligence, intentional infliction of emotional distress, trespass to chattels, violations of the federal

---

[2]     The original complaint is not included in the record.

3

and California Debt Collection Practices Acts, malicious prosecution, Business and Professions Code section 17200, and violation of 42 U.S.C. section 1983 (Section 1983).

The complaint alleged the levy procedures set forth in section 700.160(b) are unconstitutional. Specifically, the complaint alleged that levying on a writ based solely on the affidavit of the judgment creditor's assignee violates the "Fourth, Fifth and Fourteenth Amendments, as in violation of the prohibition of unreasonable seizures, rights of due process clause and the Equal Protection clauses of the United States Constitution. . . ." The complaint also alleged the County and the State wrongfully charged Dahl a $125 service fee, and that the $25 fee required to file a government tort claim is unconstitutional. The remainder of the complaint asserted claims against Larson.

The State demurred to the complaint. Larson filed a special motion to strike the complaint as an anti-SLAPP suit, pursuant to section 425.16. The County filed a motion for judgment on the pleadings. In the demurrer, the State argued plaintiffs failed to state an equal protection claim because marital status is not a suspect class and section 700.160(b) satisfies a rational basis review. The State further argued section 700.160(b) comports with due process by providing notice, time for a third party to contest the levy, and a process for parties to claim exemptions from the levy, thus the facial due process claim failed. The State contended a levy does not constitute a seizure under the Fourth Amendment because it involves no physical intrusion, and a $25 filing fee to file an administrative tort claim did not violate the constitutional right to petition the

4

government.  The trial court sustained the State's demurrer with leave to amend.[3]

Plaintiffs filed a second, then a third amended complaint. The third amended complaint asserts individual and class claims against Larson for violation of the federal Debt Collection Practices Act, and individual claims against Larson for violations of section 17200 of the Business and Professions Code.  The complaint asserts individual and class claims against the County and the State for violations of plaintiffs' constitutional rights under the Fourth, Fifth, and Fourteenth Amendments and Article I, Section 1 of the California Constitution.  Plaintiffs also assert individual claims for negligence pursuant to Government Code section 815.2 against the County and the State.  The complaint also includes a cause of action for "Violation of 42 USC 1983 Against State of California for Declaratory and Injunctive Relief re Constitutionality of Anti-SLAPP Act, Individually and/or as a Class."

The State and the County demurred to the complaint.  Both argued that the complaint failed to state a viable claim, and the court should allow no further amendments.  Plaintiffs opposed both motions.   The trial court sustained the demurrers without leave to amend and entered judgments of dismissal.

Plaintiffs timely appealed.

---

[3]    The record does not include the trial court's ruling on Larson's special motion to strike or the County's motion for judgment on the pleadings.  However, it is undisputed that the trial court granted the motion to strike in part.  Larson is not a party to this appeal.

**DISCUSSION**

On appeal, plaintiffs identify no specific error in the trial court ruling, but instead re-state several of the arguments they made below. We conclude the trial court did not err in sustaining the demurrers without leave to amend.

## I.  Standard of Review

When reviewing a trial court order sustaining a demurrer for failure to state a cause of action, "we accept as true the well-pleaded allegations in plaintiffs' . . . complaint. ' "We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law. [Citation.] We also consider matters which may be judicially noticed." [Citation.] Further, we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context. [Citation.]' [Citation.]" (*Evans v. City of Berkeley* (2006) 38 Cal.4th 1, 6.) "[W]e may affirm the sustaining of a demurrer only if the complaint fails to state a cause of action under any possible legal theory." (*Sheehan v. San Francisco 49ers, Ltd.* (2009) 45 Cal.4th 992, 998.)

"When a demurrer is sustained without leave to amend, 'we decide whether there is a reasonable possibility that the defect can be cured by amendment: if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm.' [Citation.] Plaintiff has the burden to show a reasonable possibility the complaint can be amended to state a cause of action. [Citation.]" (*Hamilton v. Greenwich Investors XXVI, LLC* (2011) 195 Cal.App.4th 1602, 1609.)

## II. The Trial Court Properly Sustained the Demurrers Without Leave to Amend

Plaintiffs' operative complaint asserts two "causes of action" against the County and the State.[4] The third cause of action is titled "Violation of 42 USC 1983 and California Constitution Art 1, Section 1 Against [the County] and [the State] for Declaratory and Injunctive Relief Only, Individually and/or as a Class." Under this heading, plaintiffs allege that as to the County, a levy pursuant to section 700.160(b): 1) violates the Fourth Amendment's prohibition against unreasonable seizures; 2) violates due process; and 3) violates equal protection principles. Within the same section of the complaint, plaintiffs allege that as to the State, section 700.160(b): 1) allows for an unconstitutional invasion of privacy; 2) impermissibly delegates judicial powers and duties to non-judicial authorities; and 3) is vague and overbroad.

The fourth cause of action is titled "Negligence/Govt. Code 815.2 Against [the County] and/or [the State]." Under this heading, plaintiffs allege the County "by and through employees of its sheriff department (which may be deemed a state entity and would include [the State] if so), and in reliance of the aforementioned spousal affidavit of the assignee of the judgment taking of a $125 service fee from amounts wrongfully seized without hearing and/or refusing to return it after a seizure is shown to be wrongful. In point of fact, the law requires the party seeking the levy to deposit sufficient funds to perfect the levy and

---

[4] The first and second causes of action are asserted against Larson only.

7

such fees are not chargeable to the levied party unless the levy is in fact completed and not wrongful."

We address these claims in turn.[5]

**A. Section 700.160(b)**

Section 700.160 is one provision within California's Enforcement of Judgments Law, "a ' "comprehensive and precisely detailed scheme" governing enforcement of money judgments' in California. [Citation.] 'As a general rule, the Law authorizes a creditor holding a "money judgment" to "enforce" that judgment against "all property of the judgment debtor". . . .' [Citations.] [¶] . . . When a creditor has a judgment in its favor against a debtor, the creditor seeking to enforce that judgment against the debtor's property must (1) obtain a *writ of execution* from the trial court, which is directed to the sheriff or other levying officer and authorizes them to enforce the judgment (§§ 699.510, subd. (a), 699.520), and (2) complete and *serve a notice of levy*, which is directed to the judgment debtor or third person holding the debtor's property and notifies them of their duties and rights (§ 699.540). [Citation.] [¶] When the debtor's property is in the possession of a third person (such as a financial institution), the judgment creditor may serve the writ of execution and the notice of levy upon the third person; once it does, the third person 'shall' 'at the time of the levy or promptly thereafter' 'deliver to the levying officer any of the [judgment debtor's] property levied upon that is in the [third person's]

---

[5] We conclude all of plaintiffs' claims fail on their substantive merits. We therefore need not and do not address the parties' arguments regarding the County's alleged liability under 42 U.S.C. section 1983 and quasi-judicial immunity.

8

possession' or 'control'. . . .  [¶]  When the third person is a 'financial institution' and the property to be levied is a deposit account with that institution, the procedures to be followed turn on whose name is on the account." (*Bergstrom v. Zions Bancorporation, N.A.* (2022) 78 Cal.App.5th 387, 397–398 (*Bergstrom*).)

Under section 700.160, subdivision (a), a court order is required before a judgment creditor may levy upon the deposit account or safe-deposit box in the name of a person other than the judgment debtor.  However, section 700.160(b) provides several exceptions.  As relevant here, a court order is not required to levy on a deposit account or safe-deposit box in the name of "[t]he judgment debtor's spouse or registered domestic partner, whether alone or together with other persons, provided an affidavit is delivered to the financial institution at the time of levy showing that person is the judgment debtor's spouse or registered domestic partner."  (§ 700.160(b)(2).)

**B. The Complaint Fails to State a Due Process Claim**

Plaintiffs argue section 700.160(b) violates the procedural due process rights of a judgment debtor's spouse because there is no provision for a pre-levy hearing for the spouse; the statute does not require a judicial determination that the property to be levied upon is in fact community property; and the burden is on the judgment debtor's spouse to seek an exemption.  The trial court properly rejected these arguments.

"The state and federal Constitutions prohibit the government from depriving persons of property without due process.  (U.S. Const., 5th Amend.; Cal. Const., art. I, § 7, subd. (a).)  In line with this constitutional bedrock, an adjudicative governmental action that implicates a significant or

9

substantial property deprivation generally requires the procedural due process standards of reasonable notice and opportunity to be heard." (*Calvert v. County of Yuba* (2006) 145 Cal.App.4th 613, 622.)  " ' "[D]ue process," unlike some legal rules, is not a technical conception with a fixed content unrelated to time, place and circumstances.' [Citation.]  '[D]ue process is flexible and calls for such procedural protections as the particular situation demands.' [Citation.]" (*Matthews v. Eldridge* (1976) 424 U.S. 319, 334.)

As illustrated by the facts of this case, the Enforcement of Judgments Law provides a judgment debtor's spouse notice and an opportunity to be heard with respect to a levy upon the spouse's deposit account or safe-deposit box.  Pursuant to section 700.140, subdivision (c), the levying officer must serve a copy of the writ of execution and a notice of levy "on any third person in whose name any deposit account described therein stands." (§ 700.160, subd. (a); *Bergstrom*, *supra*, 78 Cal.App.5th at p. 398.)  Under section 700.160, subdivision (c), the "levying officer may not require the financial institution to pay the amount levied upon until the expiration of 15 days after service of notice of levy on the third person."  Section 703.510, et seq. sets forth detailed procedures for a party to file a motion for an exemption from the levy, obtain a hearing on the motion, and to appeal an adverse decision.  Dahl availed herself of these procedures and succeeded in having the levy terminated less than two months after the account was levied upon.

Plaintiffs assert these provisions are insufficient to comply with due process requirements because there is no notice or opportunity to be heard prior to service of the levy on the financial institution and the execution lien that follows.

10

(*Bergstrom*, *supra*, 78 Cal.App.5th at p. 398 ["Once the financial institution is properly served . . . an execution lien 'arises' as to the 'amounts in [the] deposit account at the time of service on the financial institution.' (§ 700.140, subds. (b) & (c).)"].) However, none of the authorities plaintiffs cite support their argument that such pre-deprivation notice or hearing is required in a postjudgment context. For example, *Sniadach v. Family Finance Corp.* (1969) 395 U.S. 337, concerned a Wisconsin statute that allowed a creditor to garnish the debtor's wages, prior to any judgment being issued. The wages could be unfrozen only if the debtor eventually won the underlying suit. (*Id.* at pp. 338–339.) *Connecticut v. Doehr* (1991) 501 U.S. 1, similarly concerned a prejudgment attachment statute. *North Georgia Finishing, Inc. v. Di-Chem, Inc.* (1975) 419 U.S. 601, also involved a prejudgment garnishment procedure, available while litigation was pending.

Section 700.160 is a fundamentally different procedure. The provision comes into play only after a court has issued a judgment and the indebtedness is established. Section 700.160(b) allows the levy procedure based on an affidavit only as to the judgment debtor's spouse or registered domestic partner, a person whose assets, under California law, are presumed to be equally available to the judgment debtor.

Postjudgment collection procedures involve legal questions and due process concerns different from those attendant to prejudgment garnishment or attachment procedures. Thus, in *Raigoza v. Sperl* (1973) 34 Cal.App.3d 560, the court rejected the judgment debtor's argument, relying on *Sniadach* and its progeny, that California's post-judgment garnishment procedures are unconstitutional because there is no opportunity for a hearing to determine whether garnished wages are exempt before they

11

are seized and made unavailable.  The court found there was no " 'arbitrary deprivation' in requiring the debtor to apply for and prove" garnished funds are exempt (*id*. at p. 568), and cases regarding prejudgment garnishment procedures considered "significantly different legal issues."  (*Id*. at p. 567.)

Likewise, in *Phillips v. Bartolomie* (1975) 46 Cal.App.3d 346, the judgment debtors, a married couple, argued a postjudgment levy executed on their joint checking account containing exempt funds was unconstitutional because they were entitled to notice and a hearing prior to the levy.  (*Id*. at p. 349.) The court rejected this argument, concluding the postjudgment procedure that placed the burden on the judgment debtor to claim an exemption was not unconstitutional or a violation of due process.  (*Id*. at pp. 350–351, 354.)

The court in *Taylor v. Madigan* (1975) 53 Cal.App.3d 943, similarly concluded that after a judgment is rendered, constitutional due process does not require that the judgment debtor receive a second notice of the existence of the homestead exemption prior to levy by the judgment creditor.  (*Id*. at pp. 963– 964.)  The court was guided in part by reasoning from the Supreme Court:  " '[T]he established rules of our system of jurisprudence do not require that a defendant who has been granted an opportunity to be heard and has had his day in court, should, after a judgment has been rendered against him, have a further notice and hearing before supplemental proceedings are taken to reach his property in satisfaction of the judgment.  Thus, in the absence of a statutory requirement, it is not essential that he be given notice before the issuance of an execution against his tangible property; after the rendition of the judgment he must take "notice of what will follow," no further notice being

12

"necessary to advance justice." ' " (*Id.* at p. 964, quoting *Endicott Johnson Corp. v. Encyclopedia Press, Inc.* (1924) 266 U.S. 285, 288.)

Plaintiffs contend section 700.160(b) is different because it is the spouse, not the judgment debtor, who is affected. We disagree, and note at least one other court has considered, and persuasively rejected, a similar argument. In *Lind v. Midland Funding, LLC* (8th Cir. 2012) 688 F.3d 402 (*Lind*), after a default judgment was obtained against one of the plaintiffs, the judgment creditor used a Minnesota garnishment procedure to attach funds from a joint checking account shared by the judgment debtor plaintiff and his wife. The bank provided notice to the judgment debtor only. (*Id.* at p. 404.) The plaintiffs filed suit and, among other claims, alleged the judgment debtor plaintiff's wife was deprived of due process because she did not receive notice and a hearing before the account funds were attached. (*Id.* at p. 405.) The Eighth Circuit Court of Appeals rejected the argument.

The *Lind* court reasoned that *Sniadach* and similar cases did not control, and instead relied on the Supreme Court's conclusion in *Mitchell v. W.T. Grant Co.* (1974) 416 U.S. 600 (*Mitchell*), that pre-deprivation notice and hearing are not always required for attachment statutes to provide adequate due process. (*Lind, supra,* 688 F.3d 402 at pp. 406–407.) While the Court in *Mitchell* considered the procedural safeguards against wrongful deprivation that were part of the statute at issue, such as judicial involvement in the process, the *Lind* court rejected the argument that such protections are necessary to the same degree in all attachment cases. The court explained: "The attachment in this case occurred after the defendants had already secured a

13

judgment on Steve Lind's debt. Courts have noted that, when balancing the due process interests of a creditor and a debtor, the creditor's interest should be accorded more weight in a postjudgment context than it should be accorded in a prejudgment attachment. [Citations.] Indeed, the Supreme Court acknowledged in *Fuentes* [*v. Shevin* (1972) 407 U.S. 67] that its conclusion that a debtor could not be deprived of property without prior notice and hearing absent 'extraordinary situations,' [citation], applied only narrowly to the context of prejudgment deprivations, [citation]. [¶] In both the prejudgment and postjudgment contexts, postponing notice and hearing until attachment has occurred generally serves a creditor's interest in preventing the waste or concealment of a debtor's assets. [Citations.] In the postjudgment context, however, there is less risk of an erroneous deprivation because the creditor's claim to the debtor's property is supported by a judgment on an existing debt. Thus, when the creditor's interest is weighed against a judgment debtor's interest in the continued use and possession of his property, other circuits have found that postdeprivation notice and hearing can satisfy due process so long as it is 'prompt' or 'expeditious.' [Citations.]" (*Lind*, at pp. 407–408.)

While the *Lind* court acknowledged the due process analysis was affected by the fact that the wife was not a debtor, the court noted that under Minnesota law, "the owners of a joint account bear the burden to prove that funds in the account do not belong to the debtor." (*Lind*, *supra*, 688 F.3d 402 at p. 408.) Further, "[a]lthough Tracy's interest in a predeprivation hearing may be greater than her husband's, the risk to a creditor is the same. A requirement that a non-debtor joint account holder

14

receive predeprivation notice and hearing would likely increase the risk that the debtor joint account holder might conceal or transfer the property that is subject to attachment.  [¶]  Although we are mindful of the hardship such a process imposes on a nondebtor to prove her funds are not subject to garnishment, we believe that these practical difficulties of jointly held bank accounts lend weight to a creditor's interest." (*Id*. at p. 409.)

We find this reasoning persuasive, particularly in light of an additional factor here that plaintiffs dismiss:  California is a community property state. (Fam. Code, § 760.)  There is a presumption that property acquired during marriage by either spouse is community property (*In re Marriage of Ciprari* (2019) 32 Cal.App.5th 83, 91), and " 'the community estate is liable for a debt incurred by either spouse before or during marriage' except as otherwise expressly provided by statute. ([Fam. Code], § 910, subd. (a).)" (*In re Brace* (2020) 9 Cal.5th 903, 917.)

In sum, section 700.160(b) is a postjudgment procedure that is available only after a judgment has been issued.  As to a judgment debtor's spouse, it operates in a context in which there is a presumption that property acquired during marriage by either spouse is community property and therefore liable for the debts of both the judgment and non-judgment debtor spouse.  The statute provides for immediate post-deprivation notice and prompt hearing.  Even more than in *Lind*, here, where an account in a spouse's name may be community property, a requirement that a non-debtor spouse receive pre-deprivation notice and hearing would increase the risk that the debtor spouse might conceal or transfer the property that is in fact subject to levy.  Plaintiffs fail to show that, in light of these circumstances, post-deprivation notice and hearing is insufficient to provide

15

constitutionally adequate due process. (*Buckingham v. Secretary of U.S. Dep't of Agric.* (9th Cir. 2010) 603 F.3d 1073, 1082–1083 [procedural due process can be satisfied through combination of pre- and post-deprivation procedures or with post-deprivation process alone, citing *Cleveland Bd. of Educ. v. Loudermill* (1985) 470 U.S. 532, 547–548].)

We additionally reject plaintiffs' subsidiary due process arguments. Plaintiffs assert that "to the extent the levying officer is required to engage in judicial conduct, that power is unconstitutionally delegated to it." It is well established that a sheriff's conduct in carrying out functions such as executing a levy does not constitute an unconstitutional delegation of judicial power. (*Robinson v. Kerrigan* (1907) 151 Cal. 40, 49 ["The sheriff must often determine, for his own guidance in making a levy, the ownership of property. . . . The exercise of such powers by ministerial officers is a necessary function of the executive department, and although it may require similar deliberation to that involved in the exercise of judicial power, the bestowal of such powers upon the executive department does not violate the provisions of the constitution forbidding that department to exercise the functions of any other department"].)

Further, as discussed above, the post-deprivation procedures afforded by the Enforcement of Judgments Law are sufficient to meet the requisites of due process, and plaintiffs provide no authority to support their argument that the lack of judicial involvement in verifying affidavits prior to service of the levy renders section 700.160(b) unconstitutional.

Indeed, the cases plaintiffs cite all concern laws alleged to be vague, and the principle that "a law that is 'void for vagueness' not only fails to provide adequate notice to those who must

16

observe its strictures, but also 'impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an *ad hoc* and subjective basis, with the attendant dangers of arbitrary and discriminatory application.' [Citation.]" (*People ex rel. Gallo v. Acuna* (1997) 14 Cal.4th 1090, 1116 (*Acuna*); *Williams v. Garcetti* (1993) 5 Cal.4th 561, 567–568.) While plaintiffs also argue "[section] 700.160's vagueness renders it [a] violation of due process," they have pled no facts to state a claim that the law is vague. (*Aubry v. Tri-City Hospital* Dist. (1992) 2 Cal.4th 962, 967 [court does not assume the truth of contentions, deductions or conclusions of law].) Plaintiffs cite no language that is ambiguous, unclear, or " 'either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application. . . .' " (*Acuna,* at p. 1115, quoting *Connally v. General Construction Co.* (1926) 269 U.S. 385, 391.)

The trial court properly found plaintiffs fail to state a due process claim.

### C. The Complaint Fails to State a Fourth Amendment Claim

Plaintiffs further contend section 700.160(b)(2) permits an unconstitutional seizure in violation of the Fourth Amendment to the United States Constitution and Article I, Section 13 of the California Constitution. Yet, the United States Supreme Court has held that a levy pursuant to a valid writ of execution and court-issued judgment does not constitute an unreasonable seizure under the Fourth Amendment. (*Blackmer v. United States* (1932) 284 U.S. 421, 441–442 [levy on the property of witness to satisfy judgment of contempt; levy "provided by law or rule of court. . . . is not within the constitutional prohibition" of

17

the Fourth Amendment].)  Many courts since have followed this reasoning.  (*Patel v. City of Los Angeles* (C.D.Cal. Feb. 9, 2022, No. SA CV 21-01707-DOC-KES) 2022 U.S.Dist. Lexis 56222, *4 [collecting cases], affd. *per curiam* (9th Cir. 2023) 72 F.4th 1103.)  Moreover, even when a levy turns out to be erroneous, when it is served pursuant to a valid writ of execution the seizure is not unreasonable under the Fourth Amendment.  (*Johnson v. Outboard Marine Corp.* (8th Cir. 1999) 172 F.3d 531, 537 [deputy erroneously levied boat pursuant to valid writ of execution; "[T]he fact that [the deputy] was in error does not in itself make the seizure unreasonable"].)

Plaintiffs disagree with the procedure authorized by section 700.160(b)(2).  Their disagreement does not render a levy effectuated pursuant to that procedure, performed in reliance on a facially valid writ of execution as required by the statute, a violation of the Fourth Amendment.

### D. The Complaint Fails to State an Equal Protection Claim

Plaintiffs contend section 700.160(b)(2) violates the equal protection clause because it abridges the fundamental right to marry.  Neither plaintiffs' complaint nor their briefing provides any support for this claim.  Indeed, a case plaintiffs cite, *Smith v. Shalala* (7th Cir. 1993) 5 F.3d 235, is on point and undermines their claim entirely.  In *Smith*, the court found that a statute deeming individuals "married" for purposes of calculating social security benefits did not interfere with a fundamental right to marry.  (*Id*. at p. 239.)  As here, the statute did not compel marriage, impose the "married" classification for all legal purposes, prevent entry into other intimate relationships, or otherwise interfere with the decision to marry.  (*Ibid*.)  "Because

18

this classification based on marital status [did] not involve a suspect class and [did] not impact a fundamental interest," the court applied rational basis review. (*Ibid.*)

Section 700.160(b)(2) survives rational basis review. As explained above, California is a community property state and the community estate is liable for a debt incurred by either spouse. There is thus a clear rational basis for a statute treating an account in a judgment debtor spouse's name similarly to that of the judgment debtor. (*In re Talmadge* (9th Cir. 1987) 832 F.2d 1120, 1125 [community property presumptions and principles may be reasonable bases for making distinctions between married and unmarried couples in legislation].) The distinction between the property of a judgment debtor spouse and that of a third party unrelated to the judgment debtor is reasonable. Statutes and regulations are "not rendered invalid simply because some persons who might otherwise have married were deterred by the rule or because some who did marry were burdened thereby." (*Califano v. Jobst* (1977) 434 U.S. 47, 54.)

### E. The Complaint Fails to State any Constitutional Privacy Claim

Plaintiffs contend section 700.160(b)(2) unlawfully invades a judgment debtor spouse's federal and state constitutional right to privacy. Not so.

"The federal Constitution does not create a right of privacy for bank records." (*People v. Huston* (1989) 210 Cal.App.3d 192, 222.) Although plaintiffs appear to acknowledge that there is no federal or state case holding there is a federal constitutional right to privacy in bank records, they also suggest that the absence of authority does not mean "the right does not exist." We must reject this argument as contrary to existing case law regarding

19

the federal constitutional right to privacy.  Not only has the federal constitutional right to privacy been described as "extremely narrow" and "limited to those personal rights which are 'fundamental' or 'implicit in the concept of ordered liberty,' [citations]"  (*Yorkshire v. IRS*  (C.D.Cal. 1993) 829 F.Supp. 1198, 1202, affd. *per curiam* (9th Cir. 1994) 26 F.3d 942), courts considering financial records such as tax returns have concluded there is no federal constitutional right to privacy in such documents.  (*United States v. Miller* (1976) 425 U.S. 435, 442–443 [no legitimate expectation of privacy in bank records]; *Couch v. United States* (1973) 409 U.S. 322, 335–336 [no constitutional right to privacy or confidentiality in tax records]; *Weingarten v. Superior Court* (2002) 102 Cal.App.4th 268, 274 [there is no recognized federal constitutional right to privacy of tax returns].)

With respect to the California Constitution, plaintiffs correctly note that to establish a violation of the right to privacy, they must show "(1) a legally protected privacy interest; (2) a reasonable expectation of privacy in the circumstances; and (3) conduct by defendant constituting a serious invasion of privacy." (*Hill v. National Collegiate Athletic Assn.* (1994) 7 Cal.4th 1, 39–40 (*Hill*).)  However, plaintiffs have not alleged any facts to establish the first element:  that there is a legally protected privacy interest affected by section 700.160(b)(2).

"Just as the right to privacy is not absolute, privacy interests do not encompass all conceivable assertions of individual rights.  Legally recognized privacy interests are generally of two classes:  (1) interests in precluding the dissemination or misuse of sensitive and confidential information ('informational privacy'); and (2) interests in making intimate personal decisions or conducting personal activities without

20

observation, intrusion, or interference ('autonomy privacy')." (*Hill*, *supra*, 7 Cal.4th at p. 35.)

Section 700.160(b)(2) allows a judgment creditor to have a notice of levy served on a financial institution holding a judgment debtor's spouse's deposit account, and an execution lien arises as to the amounts in the account. Plaintiffs identify no dissemination or misuse of sensitive or confidential information related to the deposit account that occurs as a result of the section 700.160(b)(2) procedure. The procedure bears no resemblance to the discovery order in *Valley Bank of Nevada v. Superior Court* (1975) 15 Cal.3d 652, the primary case on which plaintiffs rely in their appellate briefing. *Valley Bank* considered "under what circumstances a litigant may, through ordinary civil discovery procedures, obtain from a bank information disclosed to it in confidence by a customer." (*Id*. at p. 654.) Section 700.160(b)(2) is not a discovery statute. It does not authorize disclosure of information, rather it is a means for an execution lien to be placed on funds. Plaintiffs do not allege that the financial institution is forced to disclose confidential information to anyone; indeed, the judgment creditor must provide a description of the property to be levied upon to the levying officer. (§ 687.010(a)(1).)

Similarly, plaintiffs offer no argument to explain how section 700.160(b)(2) implicates autonomy privacy, except to say that autonomy privacy interests are "clearly implicated by seizure of a bank account," and "[w]hat is in [a bank account] and what it is for is private." This is insufficient. "[W]e may disregard conclusory arguments that are not supported by pertinent legal authority or fail to disclose the reasoning by which the appellant reached the conclusions he wants us to

21

adopt." (*City of Santa Maria v. Adam* (2012) 211 Cal.App.4th 266, 287.)

### F. A Filing Fee Does Not Violate the Right to Petition

On appeal, plaintiffs claim the assessment of a fee to file a government tort claim "chills the right of petition." We note that the third amended complaint did not include any allegations regarding the payment of a filing fee. Although the first amended complaint alleged that when plaintiffs attempted to file a tort claim with the State they were informed there was a $25 fee to file, the same allegation was not included in the third amended complaint. However, even if the allegation were included, it would fail to provide a viable basis for a claim.

Government Code section 905.2 requires that a party seeking to assert a tort claim against the state file a claim with the Department of General Services and pay a $25 filing fee. (Gov. Code, § 905.2, subds. (a) & (c).) The fee is not required of several groups of claimants, including, for example, persons receiving government benefits and certain incarcerated individuals. (Gov. Code, § 905.2, subd. (c)(1).) Any claimant may also seek a fee waiver. (Gov. Code, § 905.2, subd. (c)(2).) Without citing any legal authority, plaintiffs argue on appeal that the fee chills the right to petition.

"[T]he failure to provide legal authorities to support arguments forfeits contentions of error." (*Ewald v. Nationstar Mortgage, LLC* (2017) 13 Cal.App.5th 947, 948.) Yet, even considering the merits of plaintiffs' argument, we must reject it. As explained in *Chorn v. Workers' Comp. Appeals Bd.* (2016) 245 Cal.App.4th 1370, 1385, the right to petition is not absolute and reasonable costs and restrictions may be imposed under both the federal and state Constitutions. (*Id.* at p. 1386 [$150 lien filing

fee in workers' compensation cases was valid restriction on right to petition].) Plaintiffs assert generally that "filing fees" are not comparable to the $25 fee required under Government Code section 905.2, subdivision (c), because they "do not involve a right to petition against the government entity causing the harm." However, they offer no factual or legal support for the distinction they seek to draw, or to support a contention that a $25 fee is an unreasonable restriction on the right to petition. (*Wolfgram v. Wells Fargo Bank* (1997) 53 Cal.App.4th 43, 57 [right to petition subject to reasonable restrictions].) This court will not develop appellants' arguments for them. (*Dills v. Redwoods Associates, Ltd.* (1994) 28 Cal.App.4th 888, 890, fn.1.)

### G. Section 425.16 is Constitutional

Plaintiffs contend section 425.16, the anti-SLAPP statute, is unconstitutional because it chills the right to petition. Specifically, plaintiffs argue they are "challenging the propriety of the statute in that it chills the right to petition solely due to the . . . application of the litigation privilege with an award of fees if it turns out it was founded in privileged conduct." The trial court properly rejected this argument.

"To combat lawsuits designed to chill the exercise of free speech and petition rights (typically known as strategic lawsuits against public participation, or SLAPPs), the Legislature has authorized a special motion to strike claims that are based on a defendant's engagement in such protected activity." (*Park v. Board of Trustees of California State University* (2017) 2 Cal.5th 1057, 1060.) "Anti-SLAPP motions are evaluated through a two-step process. Initially, the moving defendant bears the burden of establishing that the challenged allegations or claims 'aris[e] from' protected activity in which the defendant has engaged.

23

(§ 425.16, subd. (b); see [*id*.], subd. (e) [defining protected activity]; [Citations.]  If the defendant carries its burden, the plaintiff must then demonstrate its claims have at least 'minimal merit.' [Citations.]" (*Id*. at p. 1061.)  "The anti-SLAPP statute entitles a prevailing anti-SLAPP movant in most cases to recover his or her attorney fees and costs as of right.  (§ 425.16, subd. (c)(1); [citation].)" (*Catlin Ins. Co., Inc. v. Danko Meredith Law Firm, Inc.* (2022) 73 Cal.App.5th 764, 773.)

" 'For well over a century, communications with "some relation" to judicial proceedings have been absolutely immune from tort liability by the [litigation] privilege' set forth in Civil Code section 47, subdivision (b).  [Citation.]  The privilege has 'an expansive reach' [citation] and applies to claims such as interference with contractual relations [citation], interference with prospective economic relations [citation], and fraud [citation]. . . .  [¶]  The litigation privilege bars liability for 'any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that ha[s] some connection or logical relation to the action.' [Citation.]  It is 'relevant to the second step in the anti-SLAPP analysis in that it may present a substantive defense [the nonmoving party] must overcome to demonstrate a probability of prevailing.' [Citation.]" (*Bowen v. Lin* (2022) 80 Cal.App.5th 155, 165.)

As we understand their argument, plaintiffs contend that a party's ability to recoup attorney fees, when that party successfully moves to strike a complaint that lacks merit because the litigation privilege bars the claims, creates a great risk to the non-moving party.  Plaintiffs thus argue section 425.16 impermissibly chills the non-moving party's own right to petition

(i.e., to file a complaint based on communications made in judicial or quasi-judicial proceedings).

Plaintiffs' argument fails to recognize that, as explained above, " '[t]he right to petition is not absolute, providing little or no protection for baseless litigation' [Citation.]" (*Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 64 (*Equilon*); *McDonald v. Smith* (1985) 472 U.S. 479, 484 [First Amendment right to petition does not immunize baseless litigation].) Plaintiffs identify no legal basis for this court to find it constitutionally impermissible to place burdens or restrictions on litigation that is shown to lack even minimal merit, and, further, arises from the *defendant's* constitutionally protected activity.

Moreover, plaintiffs fail to meaningfully distinguish our high court's reasoning in *Equilon*, *supra*, 29 Cal.4th 53, that the fee-shifting provision of section 425.16 does not render the law unconstitutional or "inappropriately punish plaintiffs" (*id*. at pp. 62–63), and that the law does not impermissibly "bar a plaintiff from litigating an action that arises out of the defendant's free speech or petitioning." (*Id*. at p. 63). We disagree with plaintiffs' assertion that the *Equilon* court's reasoning does not apply here because their argument involves the litigation privilege. Whether due to the applicability of the litigation privilege or any other substantive defense, an action shown to lack merit may be discouraged or burdened without implicating constitutional concerns. (*Id*. at p. 64.)

25

## H. The Complaint Does Not State a Valid Tort Claim Against the County

The trial court properly sustained the demurrer to plaintiffs' cause of action against the County for negligence or other claims pursuant to the Tort Claims Act.

Plaintiffs allege the County committed a wrongful act by taking a $125 fee from their account in connection with the levy, in contravention of section 685.100. However, plaintiffs' own complaint alleges Wells Fargo assessed a $125 charge, not the County, rendering section 685.100 inapplicable.

Under section 685.100, "[a]s a prerequisite to the performance by the levying officer of a duty under this title, the judgment creditor shall deposit a sum of money with the levying officer sufficient to pay the costs of performing the duty." (§ 685.100, subd. (a)(1).) Plaintiffs have failed to allege that the $125 charge was a cost the levying officer incurred in performing duties with respect to the levy. Plaintiffs' complaint ambiguously alleges: "On or about June 22, 2018, [the county] authorized non-party Wells Fargo to release Plaintiff Dahl's funds, but deducted $125 for a purported service of Wells Fargo charged to Plaintiff Dahl." In their opening brief on appeal, plaintiffs explain: "Here, instead of getting money to perfect the levy on Ms. Dahl's account with Wells Fargo, it allowed Wells Fargo to deduct $125 from her wrongfully seized account before returning her money."

Section 685.100 does not concern fees that may be charged by a third-party financial institution when an account is levied. It does not place any responsibility on the levying officer to ensure that a third-party financial institution does not assess or collect any fees. Instead, the provision concerns the costs to the

levying officer of carrying out the levy instructions, and requires that the judgment creditor deposit a sum to cover those costs.

Plaintiffs have alleged no facts showing any duty, mandatory or otherwise, that the County owed to plaintiffs, or breached, in connection with Wells Fargo assessing a fee on plaintiffs' account as a result of the levy.[6]

## I. The Trial Court Did Not Abuse Its Discretion in Denying Leave to Amend

Finally, the trial court did not abuse its discretion in denying leave to amend. The court twice granted plaintiffs leave to amend, yet the complaint continues to fail to allege facts sufficient to state a claim. On appeal, plaintiffs have not offered new facts that would remedy the complaint's defects, nor have they shown a reasonable possibility the complaint can be amended to state a valid cause of action. (*Blank v. Kirwin* (1985) 39 Cal.3d 311, 318; *Taliaferro v. Prettner* (1955) 135 Cal.App.2d 157, 160.)

---

[6] We deny plaintiffs' request that we take judicial notice of a document which is purported to be the County's "writ policy" and was produced in discovery. Although plaintiffs reference the court's obligation and discretion to take judicial notice of decisional and statutory law, local agency rules and regulations, and regulations and legislative enactments, an internal agency policy is none of those things. (Evid. Code, §§ 451, 452.) Further, plaintiffs' description of the document indicates the policy follows the provisions of section 685.100, which renders the document irrelevant. (*Duronslet v. Kamps* (2012) 203 Cal.App.4th 717, 737.)

## DISPOSITION

The trial court judgment is affirmed.  Respondents to recover their costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

ADAMS, J.

We concur:

EDMON, P. J.

EGERTON, J.

28